**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| XAVIER HOPKINS, MARCUS SIMMS, DONYA JACKSON, AND JONTAVIUS PRUITT, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 09 C 6877<br>) |
| OFFICER M. O'BRIEN, Star #10634, UNKNOWN CHICAGO POLICE OFFICERS, and the CITY OF CHICAGO, | ) Judge Rebecca R. Pallmeyer<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

On the evening of July 3, 2009, Plaintiffs Xavier Hopkins, Marcus Simms, Donya Jackson, and Jontavius Pruitt were traveling in Chicago in Xavier Hopkins' vehicle. Defendant Matthew O'Brien, a uniformed Chicago police officer, pulled them over, and, together with other officers, handcuffed the Plaintiffs to one another in a chain while the officers performed a patdown search of Plaintiff's bodies and a search of the vehicle. Plaintiffs have sued Officer O'Brien and the City (under a statutory indemnification theory), alleging that O'Brien lacked probable cause or reasonable suspicion for the stop and that the detention, seizure, and search of the Plaintiffs and the vehicle violated their constitutional rights. Defendants have moved for summary judgment. For the reasons explained here, the motion is denied.

**FACTS**[1]

On the evening of July 3, 2009, Plaintiffs Xavier Hopkins, Marcus Simms, Donya Jackson, and Jontavius Pruitt were traveling in Chicago in Hopkins's vehicle. (Defs.' 56.1 ¶ 5.) The men are

---

[1] The parties have complied with Local Rule 56.1. Defendants' Rule 56.1(a) Statement of Material Facts is cited here as "Defs.' 56.1 ¶ __." Plaintiffs' Response is cited here as "Pls.' Resp. ¶ __.") Plaintiffs have also submitted a Statement of Additional Facts, cited here as "Pls.' Supp. 56.1 ¶ __." Defendants' Reply to Plaintiffs' Rule 56.1(b)(3)(C) Statement of Additional Facts is cited here as "Defs.' Reply ¶ __."

friends who met through Jackson; Hopkins, Pruitt, and Jackson were all visiting from out of town and staying with Simms. (Pl.' Supp. 56.1 ¶¶ 1, 2.) Hopkins was at the wheel, and he and the others, as well as one additional passenger, Rico Boyd, were on their way to pick up Boyd's identification at the home of Boyd's cousin. (Defs.' 56.1 ¶¶ 6-8; Simms Dep., Ex. A to Defs.' 56.1, at 16.) Defendant Matthew O'Brien, a Chicago police officer, was on duty and in uniform, working in a marked squad car. (Defs.' 56.1 ¶ 9.) O'Brien testified that he was at an intersection when he observed Hopkins's vehicle cross the intersection in front of him. (*Id.* ¶¶ 10, 11.) O'Brien recalls that the driver was speeding and that the vehicle's windows were tinted. (Defs.' 56.1 ¶¶ 12, 14.) Plaintiffs deny that the car was moving faster than the speed limit and, although they admit that the vehicle's windows, except for the windshield, were tinted, they deny that O'Brien could have seen this; Plaintiffs Simms and Hopkins testified that the car was moving slowly, and Plaintiffs Pruitt, Hopkins, and Jackson all testified that the windows were down. (Pls.' Resp. ¶¶ 12, 13, citing Simms Dep. at 20; Pruitt Dep., Exhibit B to Defs.' 56.1, at 49; Hopkins Dep., Ex. C to Defs.' 56.1, at 23, 26; Jackson Dep., Ex. D to Defs.' 56.1 , at 21.)

O'Brien turned onto the street on which Plaintiffs were traveling and activated his overhead "Mars" lights. (Defs.' 56.1 ¶¶ 18, 20.) Hopkins pulled over, and O'Brien exited his vehicle and approached Hopkins's vehicle. (*Id.* ¶¶ 21, 26.) By this time, according to O'Brien, at least three of the windows in Hopkins's vehicle had been rolled down. (*Id.* ¶ 27, citing O'Brien Dep., Ex. E to Defs.' 56.1, at 9.) Plaintiff Simms testified that Hopkins rolled his window down as O'Brien approached, but Plaintiffs Pruitt, Hopkins, and Jackson denied this. (Simms Dep. at 22; Pruitt Dep. at 49-50; Hopkins Dep. at 23; Jackson Dep. at 21.) At O'Brien's request, Hopkins handed over his driver's license. (Defs.' 56.1 ¶ 29.) O'Brien testified that, as he looked inside Hopkins's car, he observed cups of what he believed to be alcoholic beverages. (Defs.' 56.1 ¶ 23.) Plaintiffs admit that there was alcohol in a backpack in the trunk (inaccessible from the passenger compartment, according to Plaintiffs) (Pls.' Supp. 56.1 ¶ 8, citing Simms Dep. at 17-18; Pruitt Dep. at 25; Hopkins

2

Dep. at 22, 23), but they all deny that O'Brien observed any cups in the passenger compartment of the vehicle. (Pls.' Supp. 56.1 ¶ 5, citing Simms Dep. at 18; Pruitt Dep. at 23-24; Hopkins Dep. at 29-30; Jackson Dep. at 19.) Plaintiffs maintain that when O'Brien approached Hopkins's window, Hopkins and the others asked numerous times why they had been pulled over, but O'Brien refused to answer. (Pls.' Supp. 56.1 ¶¶ 9, 10, citing Hopkins Dep. at 32-33; Pruitt Dep. at 31.) O'Brien says that he did answer the question, explaining that he had pulled Hopkins over for speeding and for tinted windows. (O'Brien Dep. at 22.)

Officer O'Brien ordered Plaintiffs out of the vehicle. (Defs.' 56.1 ¶ 31.) More officers arrived on the scene and, at O'Brien's direction, handcuffed Plaintiffs and Boyd to one another, forming a human chain around the rear of the vehicle. (*Id.* ¶ 33; Pls.' Supp. 56.1 ¶¶ 17, 18, citing Hopkins Dep. at 38; Simms Dep. Supplemental Pages, Ex. 4 to Pls.' Response, at 30.) Plaintiff Hopkins was on one end; his right hand was cuffed to someone, though his left hand was free. (Defs.' 56.1 ¶ 36.) O'Brien explained that the practice of cuffing the detainees together is for the purpose of officer safety, but Plaintiffs deny the practice was necessary in this instance, noting that O'Brien acknowledged he had no reason to believe they had weapons. (Pls.' Resp. ¶ 35, citing O'Brien Dep. Supplemental Pages, Ex. 5 to Pls.' Resp., at 57.) The officers performed pat-downs of all of the Plaintiffs, but found no weapons or drugs on them or on Boyd. (Defs.' 56.1 ¶ 37; O'Brien Dep. at 35.) O'Brien did not personally handcuff Plaintiffs Jackson or Simms, he did not perform patdown searches on Plaintiffs Simms or Pruitt, and Plaintiff Jackson does not recall who patted him down. (Defs.' 56.1 ¶¶ 34, 38, 39.) It is undisputed, however, that O'Brien was involved in the traffic stop. Hopkins recalled that O'Brien removed things from Hopkins's pockets and placed them on the roof of the car. According to Hopkins, O'Brien "was the most assertive, . . . He gave most of the orders and did most of the talking." (Pls.' Supp. 56.1 ¶¶ 13, 14, citing Hopkins Dep. at 34.)

O'Brien testified that he smelled alcohol on the breath of one or more of the Plaintiffs, and

3

Plaintiff Pruitt recalled that O'Brien said so at the time. (*Id.* ¶¶ 40, 41.) Plaintiffs deny, however, that they had been drinking and deny that O'Brien actually did smell alcohol on any of them. (Pls.' 56.1 Response ¶ 40, citing Simms Dep. at 15, Pruitt Dep. at 21, Hopkins Dep. at 19.)

The officers did not have a search or arrest warrant and did not ask for consent to search the vehicle. (Pls.' Supp. 56.1 ¶¶ 25, 26, citing Simms Dep. at 32, O'Brien Dep. at 40.) O'Brien nevertheless searched Hopkins's vehicle. (Defs.' 56.1 ¶ 42.) O'Brien testified that he had probable cause for the search based on his observation of "open alcohol in containers inside the vehicle." (Pls.' Supp. 56.1 ¶ 27, citing O'Brien Dep. at 40.) O'Brien testified that he recovered a bottle of alcohol and four cups from the floor of the rear passenger compartment. (Defs.' 56.1 ¶ 48.) Plaintiffs deny this, citing their deposition testimony that none of them had been drinking. (Pls.' Resp. ¶ 48.)

O'Brien denies searching the car trunk, but Plaintiffs insist he did search the car trunk, as well as the passenger compartment. *Id.* ¶¶ 46, 47.) Simms specifically recalled that O'Brien took the keys from the ignition and opened the car trunk. (Pls.' Supp. 56.1, citing Simms Dep. Supplemental Pages at 35.) Hopkins contends he was five to six feet away while O'Brien searched the trunk of the car, and Simms estimates he was just a foot and a half from O'Brien during the vehicle search. (Pls.' Resp. ¶¶ 43-45.) Plaintiffs assert that O'Brien found Simms's bag in the trunk of Hopkins's car, discovered two bottles of liquor in that bag, and threw the bottles to the ground. (*Id.* ¶¶ 29, 30, citing Pruitt Dep. at 38-39, Hopkins Dep at 43-45, Jackson Dep. at 29, Simms Dep. Supplemental Pages at 35.)

According to Plaintiffs, O'Brien threatened to charge them with driving under the influence of alcohol, warning them that it would be Plaintiffs' word against his and that fighting a DUI charge would cost $10,000. (Pls.' Supp. 56.1 ¶ 22, citing Hopkins Dep. at 39, Jackson Dep. at 30, and Simms Dep. Supplemental Pages at 36.) Plaintiff Jackson told Defendants he was a criminal justice major and that he had "read about this stuff in our books all the time about how corrupt

4

Chicago police officers are." (Jackson Dep. at 31.) Plaintiffs assert that O'Brien responded with a statement to the effect that "Johnny Cochran's dead and Obama can't save your asses." (Pls.' Resp. ¶ 49.) O'Brien denies having made such a statement. (Defs.' 56.1 ¶ 50.)

According to Officer Brien and to Marcus Simmons, the traffic stop lasted 20 minutes, (Defs.' 56.1 ¶ 58), but Plaintiff Pruitt recalled that the encounter lasted at least half an hour. (Pls.' Supp. 56.1 ¶ 32, citing Pruitt Dep. at 43.) Plaintiffs contend that they were not free to leave during the encounter. Plaintiff Pruitt noted that the car was "kind of barricaded" by police cars. (Pruitt Dep. at 28.) Hopkins testified that he "definitely couldn't leave" because he was handcuffed to other persons. (Hopkins Dep. at 65.) Jackson testified that he did not feel free to leave from the time that O'Brien approached Hopkins until the time the police left. (Jackson Dep. at 40.) Simms, similarly, did not feel free to leave from the time that Officer O'Brien approached Hopkins until the handcuffs were removed. (Simms Dep. Supplemental Pages at 47.)

The parties agree that at the conclusion of the search, the officers removed handcuffs from Plaintiffs, and they were at that point free to leave. (Defs.' 56.1 ¶ 57; Pls.' Resp. ¶ 51.) Officer O'Brien told Plaintiffs they were pulled over for tinted windows and an expired City sticker, and he issued tickets for the tinted windows and sticker violation to Plaintiff Hopkins. (Defs.' 56.1 ¶¶ 52, 53.) Plaintiffs admit these things, and admit, further, that Plaintiff Hopkins's car was registered to a Chicago address and did not have a City sticker. (Pls.' Resp., ¶¶ 52-55). They deny, however, that Officer O'Brien in fact pulled them over for these reasons, citing their testimony that the windows were rolled down and that, as Plaintiff Simms testified, "the city sticker is on the windshield. So, I mean, you can't possibly see that it's expired from behind us." (Simms Dep. at 40.)

Officer O'Brien did not prepare a police report. (Pls.' Supp. 56.1 ¶ 33, citing O'Brien Dep. Supplemental Pages at 17.) The vehicle was not damaged, and none of the Plaintiffs suffered any physical injury as a result of the incident. (*Id.* ¶¶ 60, 61.) They proceeded with their plans for the

5

evening, went downtown to a bar and restaurant and watched fireworks, though Pruitt testified that he was "still kind of distraught" and Jackson testified that "[e]veryone [felt] still kind of shaken up, like, wow."). (*Id.* ¶ 62; Pruitt Dep. at 44; Jackson Dep. at 37.)

Hopkins paid the ticket for the tinted windows; the episode did not result in any financial losses for the other Plaintiffs. (*Id.* ¶¶ 56, 59.) Pruitt testified that he felt "mistreated, violated, and abused" by the officers' conduct, and acknowledged that he suffered harm "more so mentally than physically." (*Id.* ¶¶ 64, 64.) Simms testified that the episode was "degrading and unwarranted," and that he was damaged by "racial slurs" and because his "feelings were hurt by what he said." (*Id.* ¶¶ 66, 67.) Jackson testified that he suffered the harm of a "bad taste in my mouth about police officers in general," (*Id.* ¶ 68), and that as a result of it, Jackson changed his plans to pursue a career as a police officer. (Pls.' Supp. 56.1 ¶ 37, citing Jackson Dep. at 38-40.)

Plaintiff Hopkins offered the most substantial account of the damage he claims:

And actually knowing that what he said probably was true if he wanted to have a DUI put on me, he probably would – it probably would have been his word against ours, probably would have took $10,000, and at that time I did not have $10,000 to fight it. Just think of what could have happened if he would have carried out on some of the threats on the things that he was saying . . . . And it's just the thought of thinking that someone could just say something and it could pretty much affect your life based off of their word and the people in this particular power could take advantage of that and kind of like try to control you and try to make you feel less than a person by misusing their power . . . . To me it was mentally devastating.

\* \* \*

I felt it was actually . . . actually unlawful and violating experience, especially not knowing why even during the incident and being talked to the way that we was and treated and have my whole vehicle searched without my consent and my trunk and the items in my trunk moved around and my paperwork and everything inside my car strewn around, I definitely felt that was unlawful and I basically felt harassed because of that because I didn't know why.

(Hopkins Dep. at 58-59, 63-64.)

## **DISCUSSION**

Summary judgment is appropriate when the record, viewed in the light most favorable to the

6

non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In assessing the summary judgment record, the court will view the facts in the light most favorable to plaintiffs. *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). A genuine issue of fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *AA Sales & Assocs., Inc. v. Coni-Seal Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008).

**Claim of Unlawful Seizure**

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. AMEND. IV. Detention of an individual during an automobile stop constitute a seizure within the meaning of the Fourth Amendment. *Carmichael v. Vill. of Palatine,* 605 F.3d 451, 456 (7th Cir. 2010) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). An automobile stop itself must be reasonable, and is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Carmichael*, 605 F.3d at 456 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Watson*, 423 U.S. 411, 417-18 (1976); *Brinegar v. United States*, 338 U.S. 160, 164 (1949)).

Defendants' motion for summary judgment accurately summarizes Plaintiffs' claims: "Plaintiffs allege they were pulled over absent probable cause, ordered out of the vehicle, handcuffed, searched, and subjected to inappropriate language." (Defendants' Mem. of Law in Supp. of Their Mot. for Summ. J. (hereinafter "Defs.' Mem."), at 1.) Summary judgment is appropriate, Defendants contend, because O'Brien had probable cause to detain Plaintiffs and because Plaintiffs' complaint did not allege a wrongful search. Any claim challenging the search would fail, in any event, Defendants urge, because when a police officer has made a lawful custodial arrest or the occupants of an automobile, he may perform a search of the passenger compartment of the vehicle. *See New York v. Belton*, 453 U.S. 454 (1981).

The short answer to these arguments is that they assume the truth of Defendant O'Brien's

7

version of events. An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense. *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001). Short of an arrest, an officer has a basis for an investigatory stop if he can "point to specific facts that give rise to a reasonable suspicion that the person stopped is involved in criminal activity." *Jones v. Clark*, 630 F. 3d 677, 682-3 (7th Cir. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Under either of these standards, O'Brien contends, this test is met here because Plaintiffs' vehicle was traveling faster than the speed limit and had tinted windows, a violation of the Chicago Municipal Code. (Defs.' Mem. at 3.) But these facts are disputed. Plaintiffs deny they were speeding, and although one testified that Hopkins's window was rolled up when O'Brien stopped the car and approached Hopkins, a reasonable jury could believe those other witnesses who insisted that the windows were rolled down and that Officer O'Brien could not have determined that they were tinted before he stopped them. Summary judgment is inappropriate where material facts regarding the existence of probable cause are in dispute. *Jones ex rel. Jones v. Webb*, 45 F.3d 178, 180 (7th Cir.1995).

Defendants brush these disputes aside. They discount Plaintiffs' estimates of the speed at which they were traveling (Defs.' Memo, at 5), but the court views Plaintiffs' testimony as sufficient to rebut O'Brien's estimates. With respect to the tinted windows, O'Brien observes that at some point, O'Brien certainly learned that the vehicle's windows were tinted, so Hopkins was properly charged with that offense (and indeed later paid the fine). Defendants note, further, that the exclusionary rule does not apply in civil rights actions. In Defendants' view, this defeats any challenge to probable cause. They cite *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) and *Bradshaw v. Mazurski*, No. 03 C 2074, 2004 WL 170337, at *6 (N.D. Ill. Jan. 15, 2004). In each of those cases, however, an allegedly unlawful search disclosed evidence that supported the plaintiff's arrest; that evidence doomed the plaintiff's civil rights challenge to his arrest and

8

prosecution, regardless of the circumstances in which it was uncovered.  In this case, Hopkins has not challenged the validity of the charges against him.  His challenge is to the stop and detention itself, which he claims was unsupported by probable cause or even by a reasonable suspicion that criminal activity was afoot.

Defendants appear to believe that the admitted tinted window violation supports the arrest and defeats any probable cause challenge, regardless whether O'Brien observed the violation before stopping Hopkins, as he insists, or did not discover the violation until after pulling Hopkins over, as Plaintiffs urge.  *Carmichael* defeats this argument.  That case involved a drug arrest where the officers claimed probable cause existed because plaintiff's vehicle was missing its front license plate and had tinted windows.  The officers later acknowledged they did not know about the missing license plate until after they had stopped the vehicle.  On this record, the Seventh Circuit concluded that the district court erred in granting summary judgment to the officers in plaintiff's Fourth Amendment challenge.  Whether a seizure is warranted is an objective test, the court emphasized; that test is "not meant to give an arresting officer the added benefit of any facts that come to light after a relevant Fourth Amendment decision has been made."  605 F.3d at 458; *see also Janusz v. City of Chicago*, No. 03 C 4402, ___ F. Supp.2d ___, 2011 WL 2517233 (N.D. Ill. June 24, 2011) (denying summary judgment on false arrest claim where there was a dispute as to whether arresting officers had observed expired license plates before they arrested plaintiff on drug-related charges).  The case before this court is distinguishable from *Carmichael* because O'Brien stands by his assertion that he observed tinted windows and a traffic violation before he detained Plaintiffs.  A reasonable jury could disbelieve his testimony, however, and find that there was no probable cause or reasonable suspicion sufficient to support the stop or the detention of the Plaintiffs.

Defendants' remaining arguments merit only brief discussion.  Defendants cite *Maryland v. Wilson*, 519 U.S. 408 (1997) for the proposition that a police officer making a lawful traffic stop is entitled to require the driver and all of the passengers to exit the vehicle.  Because Plaintiffs here

9

have argued that the stop itself was not supported by probable cause, *Maryland v. Wilson* does not require summary judgment in favor of Defendants. It is undisputed that Plaintiffs were handcuffed to one another during the search of Hopkins's automobile, and they testified that they did not feel free to leave. Whether or not their detention constituted a full-blown arrest, disputes of fact preclude summary judgment on their challenge to the stop and detention. Nor does the court share Defendant O'Brien's apparent belief that if he did not personally handcuff or search Jackson, Pruitt, or Simms, their claims against him must be dismissed. O'Brien was alone in his squad car when the vehicle stop occurred, and a reasonable jury could conclude that he supervised and directed the detention and search of the passengers as well as Hopkins.

Summary judgment on the unlawful seizure claim is denied.

**Claim of Unlawful Search**

Defendants challenge Plaintiffs' unlawful search claim on procedural and substantive grounds. First, they argue that Plaintiffs did not allege such a claim in their complaint. The complaint includes just one substantive count, prominently labeled "THE FALSE ARREST." A complaint may, however, be amended even during trial, and the court should "freely permit" such an amendment unless the opposing party would suffer prejudice. FED. R. CIV. P. 15(b)(1). In any event, the court is satisfied that Plaintiffs' Amended Complaint put Defendants on notice that they were challenging the search. Plaintiffs alleged: "Absent probable cause, and absent Xavier Hopkins' consent, one of the two uniformed Chicago Police Officers proceeded to search the vehicle." (Am. Compl. ¶ 19.) They specifically alleged that O'Brien "opened the trunk of the vehicle" and threw bottles of liquor found within it to the ground. (*Id.* ¶ 20.) They referred to the episode as an "illegal search and arrest." (*Id.* ¶ 23.) And the parties referred to the patdowns and to the vehicle search in their summary judgment submission. Defendants' procedural objection is overruled.

The substantive objection also does not support summary judgment. Defendants cite *New*

*York v. Belton*, where the Court upheld the search of the passenger compartment of a car after the police officer pulled a vehicle over for speeding and then smelled marijuana when he approached the car. The Court concluded such a search was appropriate in light of the need to remove any weapons accessible to the arrestee and to prevent destruction of evidence. 453 U.S. 454, 455-57 (1981). More recently, the Court refined that conclusion in *Arizona v. Gant*, 556 U.S. 332 (2009), explaining there that the police may search the passenger compartment of a vehicle incident to an arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. In this case, there are obvious disputes of fact concerning these issues. First, the issue of access to the vehicle: It is undisputed that Plaintiffs were handcuffed to one another during the search of the vehicle. Although they were within close range of the car, a reasonable jury could find they were not able to access the vehicle. Nor was the search otherwise necessary to protect the officers: O'Brien himself acknowledged he had no reason to believe any of the Plaintiffs was armed.

The notion that the search might yield evidence is also disputed. Beyond examining the windows (assuming he did so), O'Brien has not suggested that evidence of the offense for which Hopkins was stopped would be found in the vehicle. O'Brien testified that he observed cups that appeared to contain alcohol in plain view; he did not stop the car because he believed Hopkins was intoxicated or charge any of the Plaintiffs with alcohol-related offenses, however, and Plaintiffs vehemently deny that they were drinking anything in the car. Plaintiffs assert that the search was not limited to the passenger compartment of the car, but that O'Brien searched the trunk as well, and destroyed two bottles of liquor he found there. O'Brien denies this, though he suggests a search of the trunk would have been permissible. The case Defendants cite, however, *United States v. Arnold*, held that the search of a car trunk incident to arrest was permissible only because the trunk was "readily accessible from inside the passenger compartment." 388 F.3d 237, 240 (7th Cir. 2004). Plaintiffs dispute that the trunk of Hopkins's car was "readily accessible."

The court denies summary judgment on Hopkins's claim of unlawful search of the vehicle.

Defendants argue that Plaintiffs Simms, Jackson, and Pruitt lack standing to bring such a claim. Defendants cite *Rakas v. Illinois*, 439 U.S. 128 (1978), where the Court held that an individual challenging a search must demonstrate a legitimate expectation in the premises searched or in the items seized. At least with respect to Plaintiffs Jackson and Pruitt, O'Brien appears to be on solid ground. Indeed, Plaintiffs appear to concede the issue, as they have not challenged the standing objection. Simms contends that he has a right to challenge the search because the two bottles of liquor that O'Brien destroyed were found in a bag that belonged to Simms. The case law that Plaintiffs cite, however, makes clear that a defendant in legal possession of an item does not necessarily have a legitimate expectation of privacy in the place from which the item is seized. *United States v. Salvucci*, 448 U.S. 83, 91 (1980); *cf. Mancusi v. DeForte*, 392 U.S. 364 (1968) (petitioner had a personal Fourth Amendment interest in an office he shared with others). The fact that the bottles of liquor were concealed in a bag may change the analysis, but Plaintiffs have not presented case law that directly supports such a conclusion, and the court declines to make the argument for them. The unlawful search claims brought by Simms, Jackson, and Pruitt are dismissed.

**Damages**

Defendants argue that Plaintiffs have not suffered any damages. The court agrees that Plaintiffs have suffered no out-of pocket losses. The court agrees, further, that O'Brien's alleged racial remarks are not independently actionable. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (collecting cases supporting the proposition that "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution"). The law does permit an award for emotional harm caused by the false arrest, however, *see Warfield v. City of* Chicago, 679 F. Supp. 2d 876, 893 n.18 (N.D. Ill. 2010) (citing *Redmond v. Goosherst*, No. 06 C 3611, 2008 WL 3823099, at *7 (N.D. Ill. Aug. 12, 2008)), and Plaintiffs have testified they suffered such harm. In

any case, the Seventh Circuit Pattern Jury Instruction for a false arrest claim does not require that plaintiff prove his/ her damages as an element of the claim. *See* 7TH CIR. PATTERN CIVIL JURY INSTRUCTIONS 7.05. Defendants are not entitled to summary judgment on this basis.

**Qualified Immunity**

Finally, Defendants have argued that O'Brien is entitled to qualified immunity. Qualified immunity is available to preclude liability for an officer who make a reasonable error in making a probable cause determination. *Anderson v. Creighton*, 483 U.S. 635, 643 (1987). In a case such as this one, the court must consider whether a reasonable officer could have mistakenly believed that probable cause existed. *Carmichael,* 605 F.3d at 459 (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). The disputes of fact described in this opinion preclude a finding of qualified immunity at the summary judgment stage. *See Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011) (holding that, where facts presented, taken in the light most favorable to plaintiff, describe a false arrest, immediate appeal is inappropriate). Plaintiffs have testified that Hopkins was not speeding and that Officer O'Brien could not have seen that the vehicle's windows were tinted. They have testified, further, that he performed a warrantless search of the car and its trunk, despite the fact that he did not believe they were armed and he knew they had been handcuffed in such a way as to render them unable to access the vehicle. If Plaintiffs' testimony is believed, Officer O'Brien pulled them over for no lawful reason and engaged in an unlawful search. No reasonable officer would believe that it was acceptable to stop and search a vehicle and detain its passengers without probable cause. Summary judgment of qualified immunity is denied.

## **CONCLUSION**

Defendants' motion for summary judgment [46] is granted in part and denied in part. The court dismisses the unlawful search claims asserted by Plaintiffs Pruitt, Jackson, and Simms. The motion is otherwise denied. A status conference is set for October 13, 2011, to set a trial date.

ENTER:

Dated: September 30, 2011	_____
REBECCA R. PALLMEYER
United States District Judge